IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THOMAS EDWARD CAMPBELL                                     PLAINTIFF

v.                                                                                 No. 1:15CV35-GHD-DAS

NURSE PRACTITIONER ANGELA BROWN, ET AL.                    DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Thomas Edward Campbell, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to provide him with adequate medical care and used excessive force against him. The defendants have moved [77], [80] for summary judgment; the plaintiff has responded [82], [83], and the medical defendants have replied. That matter is ripe for resolution. For the reasons set forth below, the motions [77], [80] for summary judgment will be granted, and judgment will be entered for the defendants.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra.* (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 671, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

Mr. Campbell's remaining claims are: (1) that the defendants failed to provide him with constitutionally adequate medical treatment regarding back, leg, and neck pain, hemorrhoids, and maintaining his weight by providing a high-calorie diet and snack bag; (2) that defendant Hodges used excessive force against Campbell by hitting him in the face; and (3) that defendants Brown and Paige used excessive force on three occasions when Brown conducted a digital-rectal examination against Campbell's will, while Paige held him down.

**Hemorrhoid Treatment**

First among Campbell's allegations is that, in 2014, Nurse Brown performed a digital-rectal exam to evaluate his complaints of hemorrhoids and that the exam caused him pain and emotional distress. Doc. 1 at 4-5, 51-52; 53-54; 55-56. He claims that this evaluation amounted to rape and has caused him mental anguish. *Id.* He also alleges that Brown provided him with Milk of Magnesia to treat his hemorrhoids. *Id.* at p. 53-54.

Campbell's medical records (totaling 1,537 pages) reveal that he submitted various sick call requests with complaints regarding his hemorrhoids beginning in 2011 and was treated by various medical providers, including Nurse Brown, through 2015, when the hemorrhoids were surgically

removed. He was first evaluated by Nurse Brown regarding his hemorrhoids on January 29, 2013. *See* Medical Records at 425-426 attached to defendant Brown's Motion [80] as Exhibit A.[1] Nurse Brown prescribed hemorrhoid ointment. *Id.* She treated Campbell again for complaints of pain, constipation, diarrhea, and hemorrhoids on May 12, 2014. *Id.* at 777. The notes show that Campbell initiated the visit with complaints of blood in his urine and stool – and that Nurse Brown evaluated him and provided treatment by updating his medications. *Id.* Campbell's medical records also show that on July 28, 2014, Nurse Brown performed another rectal exam during which Campbell screamed. *Id.* at 831-832. Nurse Brown explained to Campbell that he is going to have some pain associated with chronic neck and back problems and that she was there to help him. *Id.* He responded that he understood and he was tired of the pain. *Id.* Nurse Brown then evaluated and treated him. *Id.*

Campbell submitted another Sick Call Request for regarding hemorrhoids on August 15, 2014, and Nurse Brown treated him on August 19, 2014. *Id.* at 585-589. She provided Campbell ointment for his hemorrhoids. *Id.*

On December 22, 2014, Campbell again reported to medical with complaints of passing blood in his stool. *Id.* at 1014. The medical records reveal that Nurse Brown was not able to assess him; indeed a security officer escorted him from the clinic due to his aggressive behavior. *Id.* at 1014-1015. Later that day, Dr. Paul Madubuonwu examined Campbell, *noting that Campbell would not permit Nurse Brown to perform a rectal exam. Id.* at 1015. Campbell requested hemorrhoid surgery, and he was evaluated as a candidate for surgery on October 26, 2015. *Id.* at 1353-1355. He then underwent hemorrhoid surgery on December 17, 2015. *Id.* at 1399-1400; *see also* Doc. 75 at ¶ 6.

**Back, Neck, and Leg Pain**

---

[1] Hereafter, the court will refer to Mr. Campbell's medical record and page number in this format: MR at #.

Campbell also alleges in his complaint that he was evaluated by a surgeon in May 2013, and was advised that he needed surgery. Campbell claims that he has discussed his neck and back pain with Nurse Brown and other medical providers. *Id.* at p. 6, ¶ 7. He alleges that he is dissatisfied with Nurse Brown's response to his complaints of pain. *Id.*

As a result of his complaints of neck pain, Campbell underwent an MRI on January 25, 2013, which showed that he had two herniated discs (between C5-C6 and C6-C7). MR at 443. He was given a surgical consult in May 2013, and surgery was recommended, but Campbell was unsure if he wished to undergo the procedure. *Id.* at 1114. However, he told medical providers from 2013 into 2015 that he was supposed to have surgery on his neck, but it was never scheduled. *Id.* Campbell was referred to Dr. Greg Stallworth for a cervical x-ray, performed on January 30, 2014. MR at 668. After the x-ray, Campbell submitted a Sick Call Request for unresolved pain and medication refills. *Id.* at 713. He was evaluated by Nurse Brown. *Id.* at 713. She refilled his medications as requested. *Id.* at 714. Nurse Brown evaluated Campbell again for complaints of pain on February 28, 2014. *Id.* at 870. His medication was adjusted to treat his pain. *Id.* Nurse Brown examined Campbell on March 10, 2014, March 25, 2014, and July 1, 2014, for complaints of swelling. *Id.* at 720, 738, 817-818.

He submitted a Sick Call Request on July 13, 2014, and Nurse Brown examined him again for complaints of neck pain on July 14, 2014, and she updated his medications. *Id.* at 828. On July 28, 2014, following a sick-call request and evaluation by Nurse Brown, she wrote him a lay-in for five days to rest his back and legs. *Id.* at 831.

Campbell then submitted another sick call request with complaints of swelling in his legs and was evaluated and treated by Nurse Brown on August 28, 2014. *Id.* at 868-869. He alleges Nurse Brown saw him again on August 28, 2014 regarding swelling in his legs and ankles and a rash. Doc.

1 at p. 19; 59-60. Nurse Brown allegedly told him to "shut[]-up" and said that the rash was caused by the TEDS (compression socks), which were ordered to help the circulation in his legs. *Id.* He alleges he was treated with Haldol despite his protests that he was allergic to the drug. *Id.* at p. 19-20. Campbell's medical records show that he is not allergic to Haldol, was upset, and yelled at Nurse Brown during the visit. MR at 868-869. Medical personnel gave him the medication; he calmed down and was discharged from the clinic. *Id.*

Campbell also alleges that on September 2, 2014, he requested another "lay-in" and that Nurse Brown denied that request. Doc. 1 at 59-60. His medical records show that Michelle Clem (not Angela Brown) examined him in the medical clinic on September 2, 2014, and he was hostile, agitated, and irritable – expressing frustration about medical personnel and requesting medication for his nerves. Staff told him that the requested medicine was routed on August 27, 2014. MR at 874-875.

Campbell claims that in December 2014 Nurse Brown examined and treated him for ankle pain. Doc. 1 at 15. He requested a "lay-in," but she denied the request. *Id.*; *see also* p. 17 at ¶ 6. Campbell's medical records reflect that Nurse Brown saw him on December 29, 2014. MR at 1021-1022. During his visit, Campbell requested a lay-in for his varicose veins. *Id.* He also brought his knee-high TEDs (thrombo-embolic deterrent stockings – compression socks – used to promote healthy blood flow) to his appointment with complaints that they were too short. *Id.* Again, Campbell displayed aggression toward Nurse Brown and left the visit accusing her of racism due to her refusal to grant him a lay-in. *Id.* at 1022. That same day, Nurse Brown ordered the thigh-high TEDs as Campbell had asked. *Id.* On December 30, 2014, the day after his request, he received the thigh-high TEDS. *Id.* at 1024. Nurse Brown treated him on that visit. *Id.*

Campbell's medical record also show that, over time, Nurse Brown, as well as numerous doctors, nurses, and other medical providers, have treated him for back, neck, and leg pain – and have addressed his desire for neck surgery. *See* MR at 16-17, 26-27, 30-32, 37-39, 44-45, 51-54, 75-78, 81-85, 87-88, 91-92, 99-100, 102-103, 105, 107-111, 121-123, 127-128, 132-133, 138-141, 151-152, 155, 159, 168-171, 174-176, 193-194, 196-197, 100, 202, 211-212, 216, 234-235, 247-248, 258-259, 263-264, 267, 272-275, 289-291, 309-310, 315-318, 342-343, 345, 363-364, 376-377, 384-385, 392-393, 395-397, 420, 424, 432-433, 441-443, 449, 453, 480, 546, 560-561, 592, 634-635, 647-648, 662-663, 666-668, 687-688, 712-714, 768-769, 787-788, 798-799, 809, 827-828, 831-832, 960, 980-981, 1051-1052, 1054, 1056, 1070, 1083, 1094-1095, 1098, 1114-1115, 1161, 1264-1265, 1374, 1377, 1397, 1529. Mr. Campbell was evaluated and treated for neck, back, and leg pain many times with medication and physical therapy. *Id.*

**Withholding Snack Bag**

Campbell claims that he was supposed to receive a "snack bag" for one year, but Nurse Brown "overrode it" and changed it to 90 days. *Id.* at p. 57-58. His medical record, however, shows that he has requested and received a snack bag at various times throughout his incarceration, ordered by several different medical providers, including Nurse Brown. *See, e.g., id.* at 717, 769, 955, 969, 995.

**Excessive Force**

Mr. Campbell also complains that on December 8, 2014, Officer Hodges "hit [him] on the right side of the face" when "[he] was in a relaxed position looking up at him." Doc. 1 at 26, Doc. 82 at 3. Campbell was not restrained at the time, *id.* at 10, and he has not alleged that he suffered physical injury from the blow. In addition, Mr. Campbell's claim against Nurse Brown and Officer

Paige regarding three painful digital-rectal examinations to treat his hemorrhoid problems can be construed as a claim for use of excessive force.

*Supervisor Liability*

The plaintiff's claims against defendants Superintendent Earnest Lee, Warden Banks, and Warden Morris must be dismissed because Campbell's allegations against them arise solely from their positions as supervisors. None of these defendants personally participated in making medical decisions or using excessive force against Mr. Campbell. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, the plaintiff does not allege that defendants Lee, Banks, or Morris had any

personal involvement or caused the incident in any way. As such, the motion [77] by these defendants for summary judgment will be granted, and judgment will be entered in their favor because the plaintiff's allegations against them fail to state a constitutional question.

### Denial of Medical Treatment

Mr. Campbell's complaints regarding denial of medical treatment are without merit. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761

(S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

To say the least, Mr. Campbell has received an enormous amount of medical care during the time relevant to this case. Some of the many drugs used to treat Campbell during that time are: Dilantin, Mirtazapine, Carbamazepine, Milk of Magnesia, Dulcolax, Fiber Laxative, Neurontin, Baclofen, Tylenol, Calcium Antacid Chews, Zantac, Bacitracin-Neomycin-Polymyxin Ointment, Bactrim, Hydrocortisone Acetate, and Keflex. *See, generally,* Campbell's Medical Records. The fact that Campbell's medical records total more than 1,500 pages provides a gross measure of his innumerable visits to prison clinics, the Mississippi Department of Corrections hospital, and outside medical providers for his medical conditions – up to and including surgical correction of hemorrhoids. Unfortunately, Mr. Campbell's multiple conditions are serious, chronic, and difficult to treat, and it appears that many of the treatments have provided only partial relief. Behavioral outbursts arising out of his psychiatric problems frequently frustrated attempts by doctors and medical staff to treat him.

As set forth above, Mr. Campbell has submitted many medical request forms, and medical personnel have examined him, treated him, and conducted diagnostic testing on him frequently and regularly for his conditions since 2011. As Mr. Campbell's weight has fluctuated throughout his incarceration, the defendants and others have, in response, prescribed a 3,000 to 4,000 calorie per day diet, sometimes with a snack bag. In addition, though a doctor initially offered surgery as an option to treat Mr. Campbell's chronic neck pain, medical records reflect that he chose not to undergo surgery at that time. Since then, medical personnel have, at Campbell's request, treated his neck condition with various medications and physical therapy. Mr. Campbell has since requested surgery, but medical

personnel decided to continue the less aggressive treatment. Similarly, Mr. Campbell has requested and received medical treatment for his hemorrhoids many times, and the problem was ultimately resolved through surgery. Finally, medical personnel, including Nurse Brown, have repeatedly treated Mr. Campbell's painful legs and varicose veins with medications, compression socks to improve his circulation, and occasionally lay-ins so that he could rest his legs. Mr. Campbell has not, however, been a model patient, as he was at times combative, argumentative, and unruly – behavior resulting in his forcible removal from the clinic on more than one occasion. These disruptive episodes likely result from Campbell's accompanying mental health problems.

Taken as a whole, Mr. Campbell's allegations boil down to his belief that prison medical staff offered various treatments (which provided little relief), rather than other treatments he believes would have been more effective. However, as set forth above, Campbell's mere disagreement with the type of medical treatment he received does not rise to the level of a constitutional violation. In addition, as Officer Paige is not a medical provider and is thus not responsible for providing Campbell with medical treatment; thus, Campbell's allegations against Officer Paige regarding denial of medical treatment will be dismissed.

The court has reviewed the pleadings, motions, briefs, and voluminous exhibits in this case – and finds that Mr. Campbell has received constitutionally adequate medical care. There is no evidence that the defendants have attempted to restrict his access to medical care. Indeed, the proof makes clear that he had ready access to medical examination, diagnostic testing, and care – and made frequent use of that care. None of Campbell's allegations meet the stringent standard of deliberate indifference, as he has neither alleged nor proved that a defendant knew of and disregarded an excessive risk to his health or safety. *See Farmer*, 511 U.S. at 838. Campbell's allegations regarding denial of medical treatment are therefore without merit. The defendants' motion for summary judgment regarding the

plaintiff's claims of denial of medical care will be granted, and judgment will be entered for the defendants as to these claims.

## Excessive Force

Mr. Campbell claims that defendant Officer Hodges used excessive force against him in violation of the Eighth Amendment. A court must balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order; to establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Factors which are relevant to this issue include, but are not limited to "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of the forceful response." *Rankin*, 5 F.3d at 107 n.5 (citation omitted).

A prisoner need not prove "significant" or "serious injury" in order to prevail in an Eighth Amendment claim of excessive force. *Hudson*, 503 U.S. at 7. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the

conscience of mankind.'" *Id.* at 9-10 (citation omitted). Moreover, "[i]n cases post-*Hudson*, 'certainly some injury is still required.'" *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S. Ct. 1298, 122 L. Ed. 2d 688 (1993). A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment. *Jackson v. Colbertson*, 984 F. 2d 699, 700 (5th Cir. 1993).

The court permitted Mr. Campbell to amend his complaint on October 15, 2015. In that amendment, Campbell added Officer Hodges as a defendant, alleging that he struck the plaintiff once on the face without provocation. However, the court inadvertently neglected to reflect that change to the docket, and Hodges was not served with process. In a *pro se* prisoner case, however, the court may, even prior to service of process, dismiss claims against a defendant *sua sponte* if the allegations "fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915A. As discussed below, that is the case with Officer Hodges. Mr. Campbell alleges only that Hodges struck him once on the face for looking at Hodges when he was speaking, and Campbell has alleged no injury from the blow. Thus, as the incident involved a single use of force with no alleged injury, the application of force was *de minimis*. *Id.* Further, though striking a non-threatening inmate in the face is "malevolent," the court finds that such an act is not "repugnant to the conscience of mankind" and thus does not rise to the level of an Eighth Amendment violation. *Hudson*, 503 U.S. at 9-10.

As to the digital-rectal examination allegations against Nurse Brown and Officer Paige, Campbell's medical records make clear that such an examination is appropriate to diagnose the type and severity of hemorrhoids. In addition, on multiple occasions Mr. Campbell refused a rectal examination without incident. MR at 869, 1014-1015, 1021-1022. Further, in conducting summary judgment analysis, a court must apply common sense, *Iqbal*, 556 U.S. at 671, and the non-moving party's position must be both plausible and supported in the record, *Scott*, 550 U.S. at 381. In the

present case, using common sense, Campbell's claims are neither plausible nor supported in the record.

Mr. Campbell alleged that he considers the rectal examinations tantamount to rape. Doc. 1 at 5. He also alleged that Nurse Brown told him that if he returned to the clinic with hemorrhoid symptoms, then she or someone else would have to do another rectal exam. *Id.* Applying common sense, the court finds it implausible that Campbell would have returned to the clinic and submitted to two *additional* digital-rectal examinations if the first was conducted through force and, in his view, constituted rape. It is inconceivable that the plaintiff would, in essence, volunteer to be raped – twice. The court also finds it implausible that a female nurse and a single guard would be able to physically restrain and subdue the plaintiff – who is a 6-foot-4-inch adult man – sufficiently to conduct such an examination against his will. Nor can the court fathom a reason the nurse and guard would collude to physically engage Campbell, who is a large combative man, in such a dangerous fashion to conduct a rectal exam. Indeed, as set forth above, on multiple occasions Campbell either quietly refused a rectal examination or became hostile and was escorted from medical when the exam was mentioned. MR at 869, 1014-1015, 1021-1022. It makes no sense that Campbell would be free to refuse treatment on one occasion, then physically restrained and compelled to endure an extremely invasive examination under dangerous conditions on another.

The only record in Campbell's medical file of an incident when medical staff compelled him to receive treatment he did not want was when he became extremely agitated and combative during a medical visit, and Nurse Brown and others forced him to take a shot of Haldol and Benadryl to calm him down. MR at 869. Even then, no one physically forced him to accept the injection. *Id.*

For these reasons, Mr. Campbell's allegations of excessive force against defendant Hodges will be dismissed for failure to state a claim upon which relief could be granted. In addition, judgment

will be entered for the defendants regarding Mr. Campbell's allegations of excessive force during three hemorrhoid examinations. Thus, judgment will be entered for the defendants as to all of Mr. Campbell's allegations regarding use of excessive force.

## Conclusion

For the reasons set forth above, the motions [77], [80] by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 15th day of March, 2017.

/s/ Sh. N. Davidson
SENIOR JUDGE